August Norman HEITKAMP,
Petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. C4–84–1130.

Court of Appeals of Minnesota.

March 12, 1985.

Jerrold M. Hartke, Hartke & Montpetit, South St. Paul, for appellant.

Hubert H. Humphrey, III, State Atty. Gen., Scott A. Hersey, Asst. Isanti County Atty., Cambridge, for respondent.

Heard, considered and decided by SEDG-WICK, P.J., and FOLEY and CRIPPEN, JJ.

## OPINION

FOLEY, Judge.

Defendant seeks to appeal his DWI conviction. He contends that the trial court should have excluded his Breathalyzer test results for lack of foundation. He also contends that the evidence does not justify his conviction. We affirm.

## FACTS

State trooper Steven Sjerven stopped a pickup truck weaving within its lane and speeding. When defendant August Heitkamp emerged from the truck he almost fell. He staggered as he walked. Sjerven observed that defendant's face was flushed, his eyes were bloodshot and watery, and his breath smelled of alcohol. Sjerven arrested defendant for driving while under the influence of alcohol and transported him to a police station.

After being read the implied consent advisory, defendant agreed to submit to a Breathalyzer test. Officer Gary Lambert followed the 25–step Bureau of Criminal Apprehension (BCA) check list in administering the test. The test showed a blood alcohol concentration of .14.

At trial defendant testified that he drank only four cans of beer the afternoon of his arrest. He also testified that he had chewing tobacco in his mouth when the breath test was administered. An expert witness testified that chewing tobacco may invalidate a breath test. The expert also testified that, given defendant's weight and stated alcohol consumption, he would have had an alcohol concentration of no more than .068.

Sjerven and Lambert testified that defendant did not eat or drink anything or put anything in his mouth in their presence. Sjerven searched Heitkamp before he transported him and again during booking. Neither search revealed a chewing tobacco container on defendant's person. Before Lambert administered the Breathalyzer test he checked defendant's mouth and saw no trace of tobacco. He also asked defendant if he had anything in his mouth. Defendant replied that he did not.

On May 29, 1984, the trial judge, sitting without a jury, found defendant guilty of violating Minn.Stat. § 169.121, subd. 1(a) and (d) (1982). Heitkamp's notice of appeal to this court states that he appeals from "the order dated May 19, 1984." Testimony in the case had not closed by that date, and the record includes no order dated May 19, 1984.

## ISSUES

1. Is admission of the BCA simulator solution a prerequisite for admission of Breathalyzer test results?

2. Is the evidence sufficient to sustain the defendant's DWI conviction?

## DISCUSSION

Notwithstanding the lack of a proper appeal, we grant discretionary review to clarify the foundation necessary to admit Breathalyzer test results.

## I.

Defendant contends that the prosecutor failed to lay sufficient foundation for the admission of his Breathalyzer test results. He argues that the state should have been required to produce the shipping label affixed to the BCA simulator solution bottle to establish the concentration of the solution and the absence of contamination. The breath test check list included the certification number and concentration of the solution, but the state did not produce the actual label.

Exclusion of evidence for lack of foundation rests primarily within the discretion of the court and its determination will not be disturbed unless practical justice requires. *Bisbee v. Ruppert*, 306 Minn. 39, 235 N.W.2d 364 (1975); Minn.R. Evid. 104(a). To show the reliability of a Breathalyzer test, the state need only prove that the machine is working properly, that the operator is qualified, and that the chemicals are in proper condition. *State v. Quinn*, 289 Minn. 184, 188, 182 N.W.2d 843, 845 (1971).

The procedure which the B.C.A. Lab recommends for use with the Breathalyzer requires a separate test of room air, which should give a zero result, and a separate test of simulator solution with a know concentration of alcohol. If these two separate tests give expected results, "This would seem to be almost incontrovertible proof not only that the chemicals

are proper but that the instrument is in working order." Watts, *Some Observations on Police-Administered Tests for Intoxication,* 45 N.C.L.Rev. 34, 87 (1966).

*State v. Habisch,* 313 N.W.2d 13, 16 (Minn. 1981).

■ The BCA supplies simulator solution with a standard concentration to law enforcement authorities. Because of the reliability of the BCA procedures, the state needed only to introduce the BCA certification number to establish the reliability of the simulator solution. It was then incumbent upon the defendant to suggest why the solution was untrustworthy. *See State v. Dille,* 258 N.W.2d 565 (Minn.1977) (fact that blood test kit was furnished by BCA sufficient indicium of reliability to establish the prima facie admissibility of the test results; up to defendant to suggest a reason why the blood test was untrustworthy). The defendant offered no evidence to rebut the state's prima facie showing of the reliability of the solution.

## II.

Defendant also contends that the evidence is insufficient to support his conviction. He argues that the court failed to give proper weight to his testimony and that of his expert witness.

■ As we have stated:

Trial court "findings are entitled to the same weight as the verdict of a jury." *State v. Gardin,* 251 Minn. 157, 86 N.W.2d 711, 715 (1957). If the court could reasonably have found the defendant guilty, that verdict should not be reversed. *See State v. Nash,* 342 N.W.2d 177, 179 (Minn.App.Ct.1984).

*State v. Thurmer,* 348 N.W.2d 776, 778 (Minn.Ct.App.1984).

■ The trial court's finding that Heitkamp was driving while under the influence is supported by Sjerven's testimony concerning defendant's driving and his physical appearance. The court's finding that defendant had a blood alcohol concentration in excess of .10 is supported by Lambert's testimony that he properly performed a breath test and that the result was a reading of .14.

Defendant's contention that the test results are invalid rests upon his claim that he had chewing tobacco in his mouth during the test. However, Lambert checked defendant's mouth before the test and saw no trace of tobacco. He also asked defendant if he had anything in his mouth. Defendant replied that he did not. Two searches of defendant's person revealed no chewing tobacco container. Faced with contradictory evidence, the court was entitled to believe the officers' testimony. *Gretsfeld v. Commissioner of Public Safety,* 359 N.W.2d 744 (Minn.Ct.App., 1985)

## DECISION

The trial court properly admitted the results of defendant's Breathalyzer test. The evidence is sufficient to support his conviction for driving under the influence of alcohol.

Affirmed.